UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANTHONY L MARFIONE AND<br>MICROTECH KNIVES, INC.<br><br>*Plaintiffs*,<br><br>v.<br><br><br>KAI U.S.A., LTD. AND KALE BEYER,<br><br>*Defendants*. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 17-70<br><br><br>ORDER GRANTING DEFENDANT<br>BEYER'S MOTION TO DISMISS AND<br>DEFENDANT KAI'S MOTION TO<br>DISMISS |

Plaintiffs Anthony L. Marfione and Microtech Knives, Inc. ("Microtech") bring the present action against a Microtech competitor, Defendant KAI U.S.A. Ltd. ("Kai"), and Defendant Kale Beyer, a Kai employee, alleging violations of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), as well as defamation and commercial disparagement. Each Defendant has moved to dismiss Plaintiffs' claims. Specifically, Defendant Kai maintains that it was not the "publisher" of the third-party statements at issue, and, therefore, that it cannot be subject to liability under the Lanham Act as a matter of law; and, for the same reason, that it is immune from Plaintiffs' state law claims pursuant to the Communications Decency Act, 47 U.S.C. § 230. Doc. 28.[1] Defendant Beyer argues that the Court lacks personal jurisdiction over him. Doc. 29.[2] Plaintiffs oppose both motions. Pls.' Opp'n to Kai Mot., Doc. 32; Pls.' Opp'n to Beyer Mot., Doc. 31. Having reviewed the parties' briefs

---

[1] Defendant Kai additionally argues that because it did not "publish" the statements at issue, Plaintiffs have failed to state actionable defamation and commercial disparagement claims against it. Doc. 28. The Court need not address this argument as the Court finds that Defendant Kai is immune from Plaintiffs' state law claims pursuant to the Communications Decency Act, 47 U.S.C. § 230.

[2] Additionally, or alternatively, and for the same reasons as Defendant Kai, Defendant Beyer argues that he did not "re-publish" the third-party statements at issue, and, therefore, that Plaintiff has failed to state actionable claims against him. Doc. 29. The Court need not address these arguments as to Defendant Beyer as the Court finds that it lacks personal jurisdiction over him.

1

together with all relevant materials, the Court finds that it lacks personal jurisdiction over Defendant Beyer, and that Defendant Kai did not "publish" the statements at issue for the purposes of Plaintiffs' claims. Accordingly, the Court grants each Defendant's motion to dismiss. The Court's reasoning follows:

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Anthony L. Marfione, a resident of North Carolina, is the President of Plaintiff Microtech, a corporation organized and existing under the laws of Pennsylvania. (Am. Compl., Doc. 26 ¶ ¶ 1, 3.) Microtech designs, manufactures, assembles, and sells knives. (*Id.* ¶ 2). Defendant Kai is a corporation that also designs, manufactures, assembles, and sells knives. (*Id.* ¶ ¶ 10-11). Kai is organized and exists under the laws of Oregon, and ships its "Kershaw" and "Zero Tolerance" ("ZT") brand knives into Pennsylvania. (*Id.* ¶ ¶ 4, 12). Defendant Beyer is employed as Kai's social medial specialist. (*Id.* ¶ 59; Doc. 26-6). Beyer resides and has "a regular place of business" in Oregon. (*Id.* ¶ ¶ 6-7).

The parties agree on many of the facts germane to the present motions. (*See* Kai Mot., Doc. 28 at 3-5; Beyer Mot., Doc. 29 at 3-5; Pls.' Opp'ns, Doc. 32 at 2-3, 5-7, Doc. 31 at 2-3, 6-8). In 2011, Plaintiff Microtech began selling a knife that it named the "Matrix." (Compl., Doc. 26 ¶ 20). In 2016, Kai issued Microtech a cease and desist letter, claiming that the Matrix infringed a utility patent that Kai had obtained in 2015. (*Id.* ¶ 22). In response, Microtech "immediately discontinued" selling that version of the Matrix and other knives that it believed utilized Kai's patent. (*Id.* ¶ 24). By redesigning the Matrix and discontinuing the sale of certain other products, Microtech "resolved" the patent infringement claim, and no patent infringement or other related lawsuit was ever filed against Microtech. (*Id.* ¶ ¶ 27, 30).

On January 3, 2017, a knife enthusiast and blogger, Anthony Sculimbrene,[3] emailed Kai's Director of Sales and Marketing, Thomas Welk. (Doc. 26 ¶ 34 (citing 1/3/17 Sculimbrene to Welk Email, Doc. 26-1)).[4] In his email, Sculimbrene stated that he was "working on a series of articles for [another website dedicated to hunting, fishing, and camping gear, regarding] new releases for 2017," and asked Welk for information about Kai's new Kershaw and ZT brand knives. (Doc. 26-1 at 2; *see* Doc. 26-3 at 1). Sculimbrene additionally provided a link to one of his blog posts in which he had written that Kai was 2016's "Company of the Year." (Doc. 26-1 at 2).

Welk responded two days later with the specifications for the requested products, which, according to the linked files, included a new Kai knife named the "Natrix." (Doc. 26 ¶ 25 (citing 1/5/17 Welk to Sculimbrene Email, Doc. 26-2 at 1-2)). Two hours later, Sculimbrene replied: "[T]he in-joke—the Natrix—is my favorite product Kai has released ever. Oh god that is funny." (Doc. 26 ¶ 38 (quoting 1/5/17 Sculimbrene to Welk Email, Doc. 26-1 at 1)). Welk replied: "Not sure what you mean…joke? Natrix is a genus of colubrid snakes. Four species are in the genus. They are collectively called grass snakes and water snakes. Am I missing something?" (Doc. 26 ¶ 39 (quoting 1/5/17 Welk to Sculimbrene Email, Doc. 26-1 at 1)).

Approximately two weeks later, on January 20, 2017, Sculimbrene posted to his website an article titled "The Story Behind the Greatest Knife of All Time" (the "Sculimbrene Article"). (Doc. 26 ¶ 45 (citing Sculimbrene Article, Doc. 26-4 at 1-2)). In his Article, Sculimbrene writes

---

[3] Sculimbrene maintains a website on which he reviews knives and other "gear," such as flashlights, water bottles, and wallets. *See* Doc. 26 at ¶ ¶ 32-45 (citing Docs. 26-1—26-7, accessed at: http://www.everydaycommentary.com); *see Guidotti v. Legal Helpers Debt Resolution*, *L.L.C.*, 716 F.3d 764, 772 (3d Cir. 2013) (in reviewing a motion to dismiss, the court may consider matters of public record referenced in the complaint). According to Sculimbrene's website, Sculimbrene hopes that readers find his reviews "useful, interesting, and funny." (http://www.everydaycommentary.com/about). Sculimbrene further informs readers that he is a criminal defense attorney who resides in New Hampshire. (*Id.*).

[4] The emails and other documents referenced herein were attached to Plaintiffs' Complaint; thus, the Court may review them. *See Guidotti*, 716 F.3d at 772 (in reviewing a motion to dismiss, the court is to "consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents") (internal quotation omitted).

that he considers Kai's Natrix knife the "greatest" knife of all time because it has a "dash of storytelling" to it. (Doc. 26-4 at 1). According to the Sculimbrene Article, this "story" includes, for example, Plaintiffs having "blatantly cop[ied]" and "ripped [] off" Kai's knives when Microtech released various versions of their Matrix knives. (*Id.* at 1). The Sculimbrene Article further claims that Kai's Natrix knife is "aimed at [Plaintiff] Marfione, and it is named after a snake in the grass." (*Id.* at 2).

That afternoon, a link to the Sculimbrene Article was posted on each of Kai's ZT knives' and Kershaw knives' Instagram accounts with the following respective messages: "This is definitely worth a read—this is the story behind the #zt0777 [a ZT knife] & the new @kershawknives #7007 Natrix[;]" and "Wonder what the backstory to the new #7007 Natrix is? See why [Sculimbrene] calls it 'the greatest knife of all time!'" (Doc. 26 ¶ 60 (citing ZT knives' & Kershaw knives' Instagram Posts, Doc. 26-7)). Also that afternoon, Defendant Beyer posted on his Instagram account a link to the Sculimbrene Article with the following message: "This is the whole backstory behind [one of Kai's knives] and the knockoff, 'the Matrix' by @microtechknives and how the new @kershawknives struck a chord with its latest model, the #7007Natrix—read it at [Sculimbrene's website.]" (Doc. 26 ¶ 59 (citing Beyer Instagram Post, Doc. 26-6)). Beyer directed his post to Plaintiffs' Instagram accounts and continued: "I invite any sort of response[.] It will, as always, be unedited. Say what you want in response and I will publish it." (Doc. 26-6).

The next day, Welk emailed Sculimbrene. (Doc. 26 ¶ 54 (citing 1/21/17 Welk to Sculimbrene Email, Doc. 26-5)). The email's subject line reads: "Your article…[,]" and the body of Welk's email reads: "Just read it with a big smile on my face…Cheers." (Doc. 26-5).

In February 2017, Marfione filed before this Court a lawsuit against Sculimbrene alleging that the Sculimbrene Article contained defamatory statements. (Docket No. 1:17-cv-46 (W.D. Pa.,

filed Feb. 17, 2017)).[5]

In this action, Plaintiffs contend that "Kai and/or [] Welk was the creator and/or developer" of the Sculimbrene Article; that "the Article was originally published by Sculimbrene at the direction of Kai and/or [] Welk;" and that Kai and Beyer each "republished" the Sculimbrene Article when they posted a link to it on their respective Instagram accounts. (Am. Compl., Doc. 26 ¶ ¶ 55-56, 57-72). The Sculimbrene Article, Plaintiffs continue to assert, contains false, misleading, and defamatory statements; and, as a result, Plaintiffs have suffered—and will continue to suffer—"monetary and reputational injury." (*Id.* ¶ 80). Through Defendant Beyer's "republication" of the Sculimbrene Article, Plaintiffs contend, Beyer defamed Marfione (Count 2) and commercially disparaged Microtech (Count 4). Through Defendant Kai's "joint development and subsequent republication" of the Sculimbrene Article, Plaintiffs claim that Kai violated the Lanham Act, 15 U.S.C. § 112(a)(1)(B) (Count 1), defamed Marfione (Counts 3, 5, 6, 7),[6] and commercially disparaged Microtech (Count 7).

Defendants now move to dismiss. Defendant Beyer argues that the Court lacks personal jurisdiction over him because he is a resident of Oregon and has no contacts with Pennsylvania. Doc. 29. Defendant Kai maintains that it was not the original publisher of Sculimbrene's Article, nor did it republish the Article, and, therefore, that Kai cannot be subject to liability under the Lanham Act as a matter of law; and, for the same reasons, that it is immune from Plaintiffs' state law claims pursuant to the Communications Decency Act, 47 U.S.C. § 230. Doc. 28. The Court addresses each Defendant's motion in turn.

---

[5] In May 2017, Marfione filed a notice of voluntary dismissal, which the Court granted. (*Id.* at Docs. 17, 18).
[6] Count 3 is premised upon Kai's "vicarious[] liab[ility]" for Defendant Beyer's having republished the Sculimbrene Article. (Doc. 26 at ¶¶ 96-97).

5

## II. THE COURT LACKS PERSONAL JURISDICTION OVER DEFENDANT BEYER

A. <u>Legal Standards</u>

Federal district courts sitting in Pennsylvania have personal jurisdiction over non-resident defendants to the extent permissible under Pennsylvania law. *Mellon Bank (E.) PSFS, Nat. Ass'n v. Farino*, 960 F.2d 1217, 1221 (3d Cir. 1992); Fed. R. Civ. P. 4(e). Pennsylvania's long-arm statute extends jurisdiction to the limit of federal due process. *Mellon Bank*, 960 F.2d at 1221 (citing Pa. Con. Stat. Ann. §5332(b)). Thus, the Court need determine only whether the exercise of personal jurisdiction over Defendant Beyer comports with due process. *Id.*; *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 96 (3d Cir. 2004).

Due process requires that the defendant has sufficient "minimum contacts [with the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 145 (3d Cir. 1992). A defendant's contacts with the forum state may support either general or specific jurisdiction. General jurisdiction is not at issue in this case.[7] Specific jurisdiction "is invoked when the claim is related to or arises out of the defendant's

---

[7] Plaintiffs make a half-hearted attempt at establishing that the Court has general jurisdiction over Beyer by virtue of his being an employee for Kai, a company that sells products that are "routinely shipped into, and sold, within the Commonwealth of Pennsylvania." (*See* Doc. 31 at 6; Compl., Doc. 26 ¶ 12). However, even where the *company* is the defendant challenging personal jurisdiction, the Supreme Court has been clear that "a court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations…when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 134 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 546 U.S. 915, 919 (2011)). It will be the "exceptional case" where "a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial…as to render the corporation at home in that State." *Daimler*, 571 U.S. at 134 n.19. Kai is incorporated and has its principal place of business in Oregon. (Doc. 26 ¶ 4). Plaintiffs have not alleged facts that suggest Kai is "at home" in Pennsylvania. Furthermore, Beyer's being employed by Kai is far too attenuated to satisfy due process under a theory of general personal jurisdiction. *See, e.g.*, *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73 (1985).

contacts with the forum[; thus,] the focus must be on minimum contacts." *Carteret Sav. Bank*, 954 F.2d at 149 (internal quotations omitted).

When a defendant raises a jurisdictional defense under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of demonstrating that jurisdiction is proper. *BP Chems. Ltd. v. Formosa Chem. & Fibre Corp.*, 229 F.3d 254 259 (3d Cir. 2000). "The plaintiff meets this burden and presents a prima facie case for the exercise of personal jurisdiction by establishing with reasonable particularity sufficient contacts between the defendant and the forum state." *Mellon Bank*, 960 F.2d at 1223 (internal quotation omitted). The plaintiff may not rely on "mere allegations" or "the bare pleadings alone[; instead the] plaintiff must respond with actual proofs," such as "sworn affidavits or other competent evidence[.]" *Time Share Vacation Club v. Atl. Resorts, Ltd*. 735 F.2d 61, 66 n.9 (3d Cir. 1984).

B. <u>Plaintiffs Have Not Demonstrated That Beyer Has Sufficient Contacts with Pennsylvania</u>

Defendant Beyer contends that he does not have the minimum contacts with Pennsylvania to support an exercise of personal jurisdiction. (Doc. 29 at 3, 5-10). Beyer, Plaintiffs agree, is a resident of, and works in, Oregon. (Compl., Doc. 26 ¶ ¶ 6-7). The sole alleged basis for personal jurisdiction is Beyer's Instagram post, in which he links to the Sculimbrene Article, states that the Matrix was a "knockoff," and invites Plaintiffs to respond. (Doc. 29 at 3, 5-10; Doc. 31 at 7-8). Plaintiffs contend that this post constitutes sufficient contacts with Pennsylvania. (Doc. 31 at 7-8). Specifically, Plaintiffs assert that Beyer's post was defamatory and commercially disparaging; and that Microtech "felt the brunt of the harm" in Pennsylvania. (*Id.* at 7). Thus, Plaintiffs argue, jurisdiction is proper under the effects test set forth in *Calder v. Jones*, 465 U.S. 783 (1984). (*See id.*).

The Supreme Court in *Calder* considered an allegedly defamatory tabloid article that had been written and edited in Florida (by Florida residents), and had been published nationwide. 465 U.S. 783 (1984). The article concerned the California activities of a California resident and entertainer. Emphasizing that the alleged tort was not "mere untargeted negligence" but instead "intentional, and allegedly tortious, actions…expressly aimed at California," the Supreme Court held that California had jurisdiction over the Floridian author and editor because the "effects" of their conduct were primarily felt in California, where plaintiff lived and worked. 465 U.S. at 789.

In the Third Circuit, a plaintiff relying upon the *Calder* effects test must show that: "(1) The defendant committed an *intentional tort*; (2) The plaintiff *felt the brunt of the harm in the forum* such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort; [and] (3) The defendant *expressly aimed his tortious conduct at the forum* such that the forum can be said to be the focal point of the tortious activity." *Remick v. Manfredy*, 238 F.3d 248, 258 (3d Cir. 2001) (citing *IMO Industries, Inc. v. Kiekert AG,* 155 F.3d 254, 265-66 (3d Cir.1998) (emphasis in original).

Here, Plaintiffs do not satisfy the *Calder* effects test. Even assuming that Beyer, through his Instagram post, commercially disparaged Microtech and defamed Marfione, Plaintiffs have not pled that they felt the brunt of the resulting harm in Pennsylvania, or that Beyer expressly aimed his tortious conduct at Pennsylvania. (*See* Compl., Doc. 26 ¶ ¶ 98-102 (failing to identify *any* forum in which Microtech allegedly felt its harm, and stating only that "Beyer acted with reckless or intentional disregard for the truth [and] Microtech has and will experience financial loss as a result of Beyer's statements"); *id.* ¶ ¶ 81-94 (failing to allege any forum in which Marfione allegedly felt his harm, and failing to explain how—or even acknowledge that—Marfione, a

resident of North Carolina, felt any harm in Pennsylvania); *see also* Pls.' Opp'n, Doc. 31 (failing to mention "Marfione" anywhere other than in the case caption)).

However, in their opposition, and without attaching or citing to affidavits or other evidence, Plaintiffs maintain that Microtech "felt the brunt of the harm…in Pennsylvania [because] Microtech employs 18 individuals, a significant part of its workforce, [and has] a manufacturing facility located" in Pennsylvania. (Doc. 31 at 7); *compare Time Share Vacation Club*, 735 F.2d at 66 n.9 (plaintiffs must respond to a jurisdiction challenge with "actual proofs").

Even assuming that Plaintiffs had pled and adequately demonstrated that Microtech suffered Pennsylvania-based harm, "jurisdiction under *Calder* requires more than a finding that the harm caused by the defendant's intentional tort is primarily felt within the forum…[T]he *Calder* 'effects test' can only be satisfied if the plaintiff can point to contacts which demonstrate that the defendant *expressly aimed* its tortious conduct at the forum, and thereby made the forum the focal point of the tortious activity." *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 265 (3d Cir. 1998) (emphasis in original). "Simply asserting that the defendant knew that the plaintiff's principal place of business was located in the forum [is] insufficient in itself to meet this requirement." *Id.* (citing *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 625 (4th Cir. 1997), and *Southmark Corp. v. Life Investors Inc.,* 851 F.2d 763, 773 (5th Cir. 1988)); *see also Walden v. Fiore*, 134 S. Ct. 1115, 1125 (2014) ("mere injury to a forum resident is not a sufficient connection to a forum"). Here, Plaintiffs do not allege, let alone demonstrate, that Beyer, by linking to a third-party article on an Instagram post—a posting that can be seen worldwide on any device capable of accessing the Internet, and which does not mention Pennsylvania or any other forum—somehow targeted Pennsylvania residents. Thus, Plaintiffs have failed to meet their burden in demonstrating that the exercise of personal jurisdiction over Beyer satisfies due process

9

for the purposes of their claims.[8] *See IMO Indus.*, 155 F.3d at 265; *FireClean, LLC v. Tuohy*, 2016 WL 3952093, at *5-7 (E.D. Va. July 21, 2016) (finding the exercise of personal jurisdiction improper over non-Virginia resident who posted allegedly defamatory content about plaintiff's product on various websites, despite defendant having received the product from plaintiffs in Virginia, and despite plaintiff's allegations that: (a) defendant placed relevant phone calls to plaintiffs in Virginia; (b) servers hosting or transmitting defendant's website were located in Virginia; (c) defendant's online comments demonstrated electronic activity with the intent to engage in interactions in Virginia; and that (d) plaintiff felt the effects of defendant's conduct in Virginia, where its company was headquartered); *Binion v. O'Neal*, 95 F. Supp. 3d 1055, 1060-61 (E.D. Mich. 2015) (finding the exercise of personal jurisdiction improper over non-Michigan resident who posted allegedly defamatory content on Instagram and Twitter, despite plaintiff's feeling harm in the forum state, and despite defendant having property interests in the forum state, because plaintiff could not establish that defendant's posts were expressly aimed at or disseminated in the forum state, nor was there any allegation that defendant "took affirmative steps to direct the posts to a Michigan audience"). Accordingly, the Court dismisses the claims against Beyer (Counts 2 and 4) for lack of personal jurisdiction.

---

[8] Further, Plaintiffs' claims against Beyer appear to be based on the statements expressed within the Sculimbrene Article, and not on Beyer's own posted statement that the Matrix was a "knockoff." (*See* Doc. 26 ¶¶ 82, 98-100). Unlike as against Defendant Kai, however, Plaintiffs do not allege that Beyer originally wrote or directed the publication of the Sculimbrene Article. (*See id.* ¶¶ 45-56). In his motion, Beyer alternatively argues that merely posting a link on Instagram does not constitute "publication," as required for actionable defamation claims, nor does it constitute having made the offending statements, as required for actionable commercial disparagement claims. Beyer is correct. *See, e.g.*, *Synygy, Inc. v. Scott-Levin, Inc.*, 51 F. Supp. 2d 570, 578–79 (E.D. Pa. 1999), *aff'd sub nom. Synygy, Inc. v. Scott-Levin*, 229 F.3d 1139 (3d Cir. 2000).

### III.    PLAINTIFFS' CLAIMS AGAINST DEFENDANT KAI

A. Plaintiffs' Defamation and Commercial Disparagement Claims

Plaintiffs' claims against Kai stem from the allegedly tortious content within the Sculimbrene Article—which Kai linked to on Instagram—and not on any statements made by Kai on the posts themselves.[9] (Compl., Doc. 26 at ¶¶ 74, 95-97, 105, 121, 125).

*1. Immunity Under the Communications Decency Act*

Under the "Good Samaritan" provision of the Communications Decency Act ("CDA"), 47 U.S.C. § 230, a "provider or [a] user of an interactive computer service" may not be treated as the "publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1).  The Act further provides that "[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with" section 230. *Id.* at § 230(e)(3).  Thus, section 230 "precludes courts from entertaining [any] claims that would place a computer service provider [or user] in a publisher's role, and therefore, bars lawsuits seeking to hold a service provider [or user] liable for its exercise of a publisher's traditional editorial functions—such as deciding whether to publish, withdraw, postpone, or alter content." *Green v. America Online*, 318 F.3d 465, 471 (3d Cir. 2003) (internal quotation omitted); *see also Mitan v. A. Neumann & Assoc., LLC*, 2010 WL 4782771, at *4 (D.N.J. Nov. 17, 2010) (Section 230(c)(1) provides "immunity from common law defamation claims for persons who republish the work of other persons through internet-based methodologies, such as websites, blogs, and email"); *Dimeo v. Max*, 433 F. Supp. 2d 523, 529 (E.D. Pa. 2006), *aff'd*, 248 F. App'x 280 (3d Cir. 2007) (Section 230(c)(1) of the CDA provides immunity from state law defamation claims where "the defendant

---

[9] Kai's Instagram accounts linked to the Sculimbrene Article and stated, respectively: "This is definitely worth a read—this is the story behind the #zt0777 [a ZT knife] & the new @kershawknives #7007 Natrix[;]" and "Wonder what the backstory to the new #7007 Natrix is? See why @everydaycommentary [Sculimbrene's website] calls it 'the greatest knife of all time!'"

11

[is] a provider or user of an 'interactive computer service[;] the asserted claims [] treat the defendant as a publisher or speaker of information[; and] the challenged communication [is] 'information provided by another information content provider.'"). The Act does not, of course, prohibit the imposition of state tort liability where interactive computer service providers or users engage in "joint development" of the content posted. *See, e.g.*, *Blumenthal v. Drudge*, 992 F. Supp. 44, 50 (D.D.C. 1998) (citing 47 U.S.C. § 230).

Here, the parties agree that pursuant to the CDA, Kai is a "user" of an "interactive computer service," *i.e.*, Instagram; and that Plaintiffs' claims treat Kai as the "publisher or speaker" of the Sculimbrene Article. (*See* Def.'s Mot., Doc. 28 at 9-10; Pls.' Opp'n, Doc. 32 at 8-12). Thus, there is no dispute that under § 230, Kai is immune from Plaintiffs' state tort claims if Kai is found to have *only* posted a link to the Sculimbrene Article on Instagram, and not to have created, edited, or otherwise developed it. (*See* Def.'s Mot., Doc. 28 at 9-10; Pls.' Opp'n, Doc. 32 at 8-12); *see also, e.g.*, *Green*, 318 F.3d at 471.

### 2. *Plaintiffs Have Not Plausibly Stated That Kai Created or Developed the Allegedly Tortious Content in the Sculimbrene Article*

Defendant Kai, in its motion, maintains that the exhibits attached to Plaintiffs' Complaint demonstrate that Kai did not create, develop, or originally publish the Sculimbrene Article. (Doc. 28 at 10-12). Specifically, Defendant asserts, the Article shows that it is attributed only to Sculimbrene. (*Id.* at 10 (citing Doc. 26-4)). Further, Defendant asserts, the emails between Welk and Sculimbrene were "all one-sided[:] Sculimbrene, not Kai, repeatedly references Marfione and Microtech." (*Id.* at 11 (citing Docs. 26-1, 26-3)). "Kai's emails," Defendant continues, "were limited to the distribution of production magazines and inquiries into leaks of its upcoming products." (*Id.*). Thus, Defendant contends, Plaintiffs' own evidence demonstrates that Kai "was not involved in the Sculimbrene Article." (*Id.*). Any inference to the contrary, Defendant asserts,

is not reasonable, and, therefore, Plaintiffs' state law claims should be dismissed. (*Id.* at 10-11; Doc. 33 at 6 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Plaintiff, interpreting the same evidence, maintains that it has plausibly demonstrated that "Kai is the creator or developer, in whole or in part, of the content at issue." (Doc. 32 at 11-12).

To survive a motion to dismiss made pursuant to Rule 12(b)(6), a plaintiff must plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In "[d]etermining whether a complaint states a plausible claim for relief," the reviewing court must "draw on its judicial experience and common sense." *Id.* at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. Pro. 8(a)(2)).

Here, the Sculimbrene Article states that it was "[p]osted by Tony Sculimbrene," on Sculimbrene's own, un-affiliated website. (Doc. 26-4). Plaintiffs' proffered evidence (the email correspondence between Welk and Sculimbrene) begins with Sculimbrene reaching out to Welk; and Sculimbrene does so because he is working on "a series of articles for AllOutdoor" regarding new product releases. (Doc. 26-1). According to its website, AllOutdoor "is a fishing, hunting and outdoor blog dedicated to obsessively covering product reviews, breaking news, and expert advice." (accessed at: http://www.alloutdoor.com/about-us/). Plaintiff has not alleged—and there is no indication—that AllOutdoor is affiliated with Kai. (*See id.*) (AllOutdoor is "powered by a writing staff whose viewpoints are as unique as their experiences")); *see generally* Doc. 26; Doc.

13

26-1)). In response to Sculimbrene's request for Kai's not-yet-released product information, Welk does not highlight the Natrix or any other Kai product; instead, he provides Sculimbrene with links to four files, and writes that Sculimbrene should "let [him] know if [he] ha[s] questions, or need[s] anything more." (Doc. 26-1 at 1-2). In response to the files provided, Sculimbrene writes that "the Natrix" is Sculimbrene's "favorite product" and indicates that he is "in" on some "joke." (*Id.* at 1). Welk, in turn, responds: "Not sure what you mean…joke? Natrix is a genus of colubrid snakes...[.]" (*Id.*).

Even assuming, as Plaintiffs suggest, that these emails demonstrate that the Natrix name "was selected to portray [Plaintiff] Marfione and Microtech as a 'snake in the grass[,]'" (Doc. 32 at 12), and that this portrayal constitutes actionable, tortious conduct, there is no indication that Welk knew, let alone encouraged, Sculimbrene to include this or anything else in his upcoming Article. To the contrary, Welk's subsequent (and only) communication with Sculimbrene, one week before the Article's release, indicates that Welk was focused only on keeping the new product information confidential until the public release, and on Sculimbrene's reviews of how Kai's products worked. (*See* 1/13/17 Welk to Sculimbrene Emails, Doc. 26-3 (asking Sculimbrene whether he "leak[ed]" the new product specifications, and telling Sculimbrene that if there were "any samples" Sculimbrene wanted, to let Welk know). Thus, the inference Plaintiffs suggest is unsupported. *See Iqbal*, 556 U.S. at 678; *Cf. Dimeo v. Max*, 433 F. Supp. 2d 523, 530 (E.D. Pa. 2006), *aff'd*, 248 F. App'x 280 (3d Cir. 2007) (citing cases and finding that defendant "did no more than select and edit posts," and, therefore, that he was not the "provider" of the "content" for the purposes of the CDA).[10]

---

[10] Plaintiffs are likely correct that Welk does not like Marfione as a person. (*See* Welk Email, Doc. 26-3 at 1) ("Fuck Tony Marfione…[.]"). However, given the remainder, or lack thereof, of Plaintiffs' proffered evidence, it is not reasonable to infer that Welk's general dislike of Marfione suggests that Welk, or any other Kai employee, created, developed, or published any of the allegedly defamatory statements in the Sculimbrene Article.

14

Plaintiffs additionally maintain that Welk's "express[ion of] pleasure and approval of the Article the day after it was posted," demonstrates that "Welk provided information and direction to Sculimbrene with the direct purpose of damaging Microtech with false information." (Doc. 32 at 12). However, there is nothing untoward about a Director of Marketing and Sales being pleased that a reviewer of his company's products considers one of those products "the greatest of all time." Without more, the inference that Welk created the Article merely because he was pleased with some or all of it after its release is unreasonable. *See, e.g.*, *Russell v. Implode-Explode Heavy Indus., Inc.*, 2013 U.S. Dist. LEXIS 133358, at *28 (D. Md. Sept. 18, 2013) ("Defendant's mere agreement with the content of the article does not give rise to liability for defamation") (citing *S.C. v. Dirty World, LLC*, 2012 WL 3335284, at *4 (W.D. Mo. Mar. 12, 2012), *Global Royalties, Ltd. V. Xcentric Ventures, LLC*, 544 F. Supp. 2d 929, 933 (D. Ariz. 2008), and *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997)).

Plaintiffs' additional references to the record misstate the evidence or are otherwise irrelevant. (*See* Doc. 32 at 12). First, Plaintiffs maintain that in the comments section underneath the Article, Sculimbrene "admit[ted] that he received assistance from and relied upon information from Kai's Tom Welk to publish the defamatory claims." (*Id.*). Plaintiffs here refer to Sculimbrene's response to an unknown party, in which Sculimbrene wrote: "I had a long 3 hour interview with [Welk] in which he discussed this issue." (*Id.* (quoting Doc. 26-4)). Plaintiffs would have the Court believe that the "issue" to which Sculimbrene refers is something defamatory and/or commercially disparaging within the Article. However, Sculimbrene's comment clearly relates to which knife design features he believes are patentable, which he believes are not, and which of Kai's patents was potentially infringed by Plaintiffs' first—and now re-designed—Matrix knife. (Compare *id.* at 1 with Doc. 26-4 at 4).

Plaintiffs next contend that that Kai, in its Instagram posts, "added a statement that the [A]rticle was true," thereby "adopt[ing] Sculimbrene's words as its own." (Doc. 32 at 13). Plaintiffs contend that this "admission" combined with Kai—through the Instagram posts by Beyer, Kershaw knives, and ZT knives—"presents more than enough facts to state a claim for relief that is plausible on its face." (*Id.* at 12). However, Kai's Instagram posts do not state that the Sculimbrene Article is true. (*See* Doc. 26-7). To the contrary, Kershaw knives' post tells followers to "[s]ee why @*everydaycommentary*," *i.e.*, Sculimbrene, "calls [the Natrix] 'the greatest knife of all time!'" (*Id.* at 4) (emphasis added). Moreover, Plaintiffs do not provide any support for their contention that potential increased viewership of allegedly tortious content effects who should be considered the "creator" or "developer" of that content. (*See* Doc. 32 at 11-12); *compare Novins v. Cannon*, 2010 WL 1688695, at *2–3 (D.N.J. Apr. 27, 2010) ("multiple courts have accepted" that CDA immunity applies to a "user [of an interactive computer service] who takes affirmative steps to republish another's content") (citing cases); *accord Obado v. Magedson*, 612 F. App'x 90, 93 (3d Cir. 2015). Accordingly, the Court finds that the exhibits attached to Plaintiffs Complaint, and as described in Plaintiffs' briefing, are insufficient to plausibly support Plaintiffs' defamation and commercial disparagement claims against Kai.

Finally, Plaintiffs contend that "the extent of the content to which Kai jointly developed and created with Sculimbrene will be the subject of discovery." (Doc. 32 at 13). However, Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79. The Court has found that Plaintiffs, in alleging that Kai and/or Welk created the offending statements within the Sculimbrene Article, have alleged nothing more than conclusions. Additionally, Plaintiffs have already been provided with private communications between Welk and Sculimbrene, and Plaintiffs attached those communications to their Complaint.

In their briefing, Plaintiffs do not allege that anyone else at Kai communicated with Sculimbrene prior to Sculimbrene's posting the Article. Nor have Plaintiffs alleged what additional discovery might produce.[11] Thus, the Court grants Defendant Kai's motion to dismiss the defamation and commercial disparagement claims against it (Counts 3, 5, 6, 7). *See id.*; *Nemet Chevrolet, Ltd. V. Consumeraffairs.com, Inc.*, 591 F.3d 250 (4th Cir. 2009) (finding that plaintiff had not sufficiently alleged that defendant was *not* entitled to immunity under § 230 of the CDA, that further discovery was not warranted, and that the district court's granting defendant's 12(b)(6) motion was appropriate).

B. <u>Plaintiffs' Lanham Act Claim</u>

The Lanham Act, 15 U.S.C. § 1125(a), provides a cause of action for any "false or misleading" description or representation of a product or service. Specifically, the Lanham Act requires a plaintiff to show that the defendant made a false or misleading statement about a product or service that is used in interstate commerce, that the statement deceived or had the tendency to deceive, and that as a result, plaintiff suffered a likelihood of declining sales. *U.S. Healthcare Inc. v. Blue Cross of Greater Phila.,* 898 F.2d 914, 922–23 (3d Cir.), *cert. denied,* 498 U.S. 816, (1990) (citing 15 U.S.C. § 1125(a)). Thus, as a threshold matter, Plaintiffs must demonstrate that Kai "made" the allegedly tortious statements. *See id*. For the reasons described above, the Court finds that Plaintiffs have failed to do so, and, therefore, the Court dismisses Microtech's Lanham Act claim against Kai (Count 1).[12]

---

[11] Discovery closed without Plaintiffs having submitted to the Court further evidence in support of their contention that Kai contributed to or created the allegedly tortious portions of the Sculimbrene Article. (*See* Doc. 30). However, if, in the course of discovery, Plaintiffs have unearthed additional support for their contention that Kai created or contributed to the allegedly tortious portions of the Sculimbrene Article, they have leave to file a motion for reconsideration of this Order. Plaintiffs must, however, attach to this motion additional evidence turned over during discovery that they believe supports their claims.

[12] Accordingly, the Court need not address Defendant's argument that Sculimbrene's only statement pertaining to Microtech's knife was not false or misleading under the Lanham Act. (Doc. 28 at 12-15).

## IV. CONCLUSION

Having found that the Court lacks subject matter jurisdiction over Defendant Beyer, and that Defendant Kai was not the publisher or the maker of the allegedly tortious statements at issue, the Court hereby ORDERS as follows:

1. Defendant Beyer's motion to dismiss [29] is GRANTED;

2. Defendant Kai's motion to dismiss [28] is GRANTED;

3. Plaintiffs' Complaint is DISMISSED;

4. Plaintiffs are granted leave to file a motion for reconsideration as to the Court's ruling on their claims against Kai. To this motion, Plaintiffs must attach evidence produced during discovery that Plaintiffs believe support their contention that Kai created or developed the allegedly tortious portions of the Sculimbrene Article. Plaintiffs must file this motion no later than April 6, 2018. In the event that Plaintiffs file a motion for reconsideration, Defendant Kai may file a responsive brief no later than April 16, 2018;

5. The clerk is ordered to send copies of this Order to the parties.

**IT IS SO ORDERED**.

DATED this 27th day of March, 2018.

*Barbara J. Rothstein*

BARBARA J. ROTHSTEIN
UNITED STATES DISTRICT JUDGE